Morning, Your Honor. Morning. May it please the Court, Scott Miser on behalf of the United States in this appeal. This too is a SORNA case. The principal question here is whether SORNA's registration requirements violate the ex post facto clause when they're triggered by a state juvenile adjudication that predated SORNA's enactment. May I just ask you a preliminary question? Why shouldn't the District Court be allowed to reconsider this matter in light of the Supreme Court decision to vacate juvenile mail? Well, Your Honor, I think two reasons. One is that this is a pure question of law. This Court's review is de novo in this circumstance. I'm not sure sending it back to the District Court is going to appreciably aid this Court in making a legal ruling about whether the statute on its face is punitive or civil. So you would urge this Court to make that decision? We would. And I think the second reason, I've actually lost my thought on that one, but I think the first reason is good enough at this point. And again, the de novo standard here really leaves nothing to determine on remand. Now, we would answer the question about an ex post facto violation in the negative. And we think that the law here is similar in relevant respects to the Alaska law that the Supreme Court upheld in Smith v. Doe and to the Nevada law that this Court very recently upheld against an ex post facto challenge in the ACLU of Nevada v. Masto case, which we cited to the Court in the Rule 28-J letter. And like those statutes, SORNA establishes a non-punitive regulatory regime that's designed to protect public safety. And because the statute is civil and not punitive, applying it retroactively cannot violate the ex post facto clause. We have one added wrinkle in this case, which is that Mr. Elkins, the defendant here, is a former juvenile offender who was subject to registration and notification requirements independently as a matter of state law. And at the very least, we would ask the Court to hold that there's no ex post facto violation as applied to that category of offenders. Well now, what about, I think there's a January 25, 2012 opinion in U.S. v. Juvenile Mail. What's the effect of that opinion? I don't think the opinion has any effect here. What the Court there did was hold that there was some conflict between the Federal Juvenile Delinquency Act and SORNA with respect to the disclosure of information. And so to that extent, I think the Court really basically found the same thing that the Juvenile Mail panel had in 2010. But for the reasons we've explained in our brief, namely that the dissemination of truthful information and furtherance of legitimate government function is not punishment, that finding or that conclusion doesn't affect this case. And I'd also note, Your Honor, that the Juvenile Mail panel, the 2012 decision you referenced, went on to find no constitutional problems under a number of other provisions of the Constitution and strongly suggested there that SORNA was not punitive. And of course, in ACLU v. Masto a couple months later, analyzing a Nevada law that was passed to comply with SORNA, the Court definitively held that SORNA was not punitive, either in intent or in effect. Well, if we were to vacate the dismissal of the indictment and remand, would Mr. Elkins be able to argue as a defense that his travel to California did not give rise to an obligation to register under Washington law or that he reasonably did not know that his travel gave rise to an obligation to register under Washington law? I can't say whether that challenge would be foreclosed. Certainly the prior argument informed the Court that there can be factual debate in a particular case about whether the defendant has the knowledge requirement, the mens rea requirement, in SORNA in Section 2258, SORNA's criminal penalty. We've cited to this Court's Crowder decision and the 2011 decision from this Court in which the Court analyzed the knowingly language in the statute and interpreted it to mean knowledge of some duty to register, not specific knowledge that registration was required under SORNA. But Crowder is distinguishable, isn't it, in that traveling from one state to another, whereas Elkins merely traveled to California for a temporary visit? With respect, Your Honor, I don't think that that fact is established in the record. The factual record in this case is quite barren. We have some representations to that effect from this counsel. We've cited the court to the pretrial services report, which indicates that Elkins told the agents upon arrest that he actually fled Washington, fleeing a state warrant for violation of his community custody conditions, and was headed to Florida because he didn't believe that the Washington state warrant would be enforceable in Florida. If that's the case, again, I'm not sure that that accounts as simply traveling, going on vacation. And I'd also direct the Court to the state registration forms under Washington law that Mr. Elkins signed, initialed, and submitted in support of this motion to dismiss in district court. And illustrative of that, I think, is the form at page 44 of the excerpt of the record. And what that says is, if you move out of the state, you must send written notice to the county sheriff, with whom you last registered, within 10 days of moving. You are also hereby unnoticed that the state to which you intend to move may also have sex and kidnap offender registration requirements which apply to you. If the state you are moving to require registration for your offense, you must do so within 10 days, or you can be charged in this state, meaning in Washington, with failure to maintain your registration. So, again, I think that the notice here was quite specific, that crossing state lines didn't just subject it potentially to California registration, but he had to tell Washington if he was doing so as well. I wonder if we ought to even consider this issue, since the district court didn't appear to consider it very fully. That's correct, Your Honor. We put a footnote in our reply where you're saying that we have no objection if the court doesn't feel that the facts are developed on the due process issue. We have no objection to that part of the case going back to the district court. The other ex post facto issue in this case is the ex post facto challenge not to SORNA's registration requirements, the requirements that are in Title 42, but the criminal penalty, which is in Title 18, Section 2258. The court had previously found no ex post facto violation under the George decision. We acknowledge in the 20HA letter that the court has vacated the George panel decision in light of the Supreme Court's decision in Reynolds and this court's intervening decision in Val Verde about when SORNA became effective as applied to pre-SORNA offenders. But as we pointed out in the briefs, every court that's looked at that issue has found no ex post facto violation because SORNA requires, in this case, the case of interstate travel, at least two actions, interstate travel and a failure to register or update a registration that took place after the effective date of the statute. So, again, there can be no retrospective effect under Section 2250 itself and every court of appeals has held that there's no ex post facto problem in applying that part of SORNA to interstate travel. And that gets us back to the question, the main question in the case, again, about whether the registration and notification provisions separately violate ex post facto. And I'm happy to answer any questions the court has about that, but our primary submission would be on the strength of the Eleventh Circuit's decision in WBH, which we think is very similar, the court should find no ex post facto problem as a general matter and at the very least because of the conditions to which Mr. Elkins was subject as a state sex offender under Washington state law, SORNA was not punitive as applied to that category of offenders. So, in what ways, and I'm going to ask this of Mr. Elkins' counsel, in what ways is Mr. Elkins' obligation to register under SORNA different than his obligation to register under Washington law? Well, I think there may be some differences in there, maybe some differences because they change over time. And one thing that's not in the record, and I'll mention it and I hope counsel has a chance to respond, but is that the frequency of reporting, for example, is a time of Mr. Elkins' offense conduct here was 90 days under Washington law because he was a high risk offender, not the highest risk offender, but a higher risk offender. And that's changed because he's listed right now on the publicly available Washington sex offender registry as transient. And like in Montana, that would subject him to more frequent, I think in Washington it's actually seven days, weekly notification requirements. And in the meantime, Washington law has actually repealed the 90-day requirement for some categories of offenders. So state law changes from time to time, and we can't always say there's going to be perfect congruence between SORNA and state law. But I think for purposes of this case and the record we have here, the forms that he signed and that Mr. Elkins put into the record here in support of his motion to dismiss reflect an exact, basically the same frequency of reporting, 90 days, lifetime duration, which again under SORNA could be knocked down to 25 years if he has a clean record, which he doesn't. And Washington law would allow the possibility of a petition for relief from that requirement, but as we've pointed out, Washington law bars a petition for relief where an offender has been separately convicted within the last two years of failing to register as a sex offender under state law, and that was the case for Mr. Elkins here. And then it instructs the courts to look at a number of factors, including criminal history since then, and Mr. Elkins does have a significant criminal history since the time of his sex offense. So we submit that in this case there's really no conflict between the requirements imposed under state law and imposed under state law and under SORNA. And even if there were, potentially what we're talking about here is some bits of additional information or some bits of additional community notification, but those have been held by the Supreme Court and this court not to be punitive for purposes of the ex post facto clause. The last thing I'll mention about that is that since 2011, since the supplemental SORNA guidelines came out, SORNA has actually basically put this back into the state's hands. And the Attorney General's guidelines state that there's no independent disclosure requirements under SORNA for those offenders who would be required to register based on juvenile adjudications. So anything, any kind of community notification burden that Mr. Elkins is claiming here is a product exclusively of Washington law in this case and not of SORNA as of this time. I'm happy to address any further questions or concerns the Court has. Otherwise, I reserve my time for rebuttal. Thank you. Good morning. Good morning, Your Honors. Matt Campbell from the Federal Defenders of Eastern Washington and Idaho on behalf of Mr. Elkins. And I was busily writing during Opposing Counsel's presentation, so I'll try to address many of the same questions that the Court had asked of Opposing Counsel. I'm curious on Crowder, that the Ninth Circuit held that a person only had to know that he needed to register and did not need to know that he was required to register under SORNA. Why isn't Crowder controlling here? Your Honor, I think there's several questions at issue in Your Honor's question. And I think primarily one has to look at the differences in the registration requirements. And perhaps this involves a bit of a factual issue in this case, which is looking at the notification that Mr. Elkins received and comparing that to the notifications under SORNA. This was an issue addressed in some of the questioning about what's the difference between, whether there's a difference in travel and interstate commerce versus moving. And in this case, we believe that some of the more legal issues are intimately involved with the facts, meaning if you look at the notifications, Mr. Elkins was affirmatively told that if he moved, he would, certain consequences would occur. He would have to notify if he moved within Washington. If he moved outside of Washington, he would have to then or may have to notify the state to which he moved. However, it was very clear in those documents that it said moved. Here, we have a situation where, and the record is not as developed as it might have been had this matter gone to trial, but there's certainly evidence that Mr. Elkins was traveling, perhaps for an extended period of time, but traveling nonetheless, perhaps not moving. Under those circumstances, the notice requirements under the state law and the notice requirement under SORNA are two entirely different things, and I would argue that if the notices under Washington law are supposed to inform him of his SORNA duties, they don't. In fact, they affirmatively mislead him into thinking that he doesn't have to do anything unless and until he moves. Well, I'm just wondering if, I'm wondering why shouldn't the dismissal be vacated because under the standards set forth in Smith v. Doe, SORNA's application to Elkins is not punitive because in Washington, the records of juvenile sex offenders are not confidential and the differences between registering under SORNA and Washington are minimal, certainly at the time of this, and then although Elkins may not have had actual knowledge of his obligation to register pursuant to SORNA, he was aware of his obligation to register under Washington law, and the Ninth Circuit has held that such knowledge is sufficient to support a conviction under SORNA, and that's Crowder, right? So I'm just wondering, you know, talk me out of that. Okay, I will try. Again, I think there are several issues at play there. First, I think in terms of the notice issue, we would argue that he didn't receive SORNA notice. He received Washington notice. So the idea that travel... But doesn't Crowder say that would be okay? I think it might be okay, but for what we would characterize as affirmatively misleading. If one says you only have to notify people if you move, then that seems to indicate that if you're merely going on an extended vacation, you don't have to notify them. Well, I guess is that why you might win at trial, not why... You know, here we're talking about dismissal, right? Correct. On a strict legal matter. Correct. Now, you might have defenses that would allow you to win at trial, but that doesn't... But when you dismiss it outright, you're basically saying legally, you know, game over. Correct, Your Honor, and I would concede that point that the notice and the strict legal arguments are two separate things. Nevertheless, in regard to Your Honor's question about the differences between Washington notification and SORNA notification, as a primary matter, and in rereading this Court's opinion in juvenile mail, the vacated opinion, which we recognize is vacated, so it's not at most its persuasive authority, but I think in going through that opinion, the rationale employed... After the vacated one, don't we have another one? Don't we have another juvenile mail after the vacated one? A January 25, 2012 one? We do. So aren't we just... If that one's vacated, then we have one after. Don't we go with the one after, or is that... Well, I think the description in the vacated juvenile mail addresses in great detail the particular factors as to why this is, in fact, punitive, and we're simply saying... But it's vacated. That's the problem. Conceded. But we would agree that... Or we would assert that the discussion in there is still worth reading and considering. I recognize that it's vacated, and it's not a mandatory precedent for this Court. It's kind of like when I've written a dissent, and I really love my dissent, and I wish that were the law, but it's not. Exactly. And we're not saying that it is the law. We're simply saying that in reading that, that Court went through an explicit discussion of the multiple factors that would lead to conclude that it is punitive, and we believe that those factors are still accurate, albeit recognizing that it is no longer precedential. And to get back to Your Honor's first question, we would assert that it may be entirely appropriate in this case where both the juvenile mail case that was relied on heavily by the District Court and the second argument, which the government relied heavily on George, where both cases have now been vacated, a remand may be appropriate under circumstances to deal with those two issues as well as the third issue of due process. Well, I think what, if I understand the government's position, but they're saying as a matter of law that we should determine whether it's punitive or not before we send it back. So if we think it's not punitive, you know, rather than giving the District Court another chance to get it right or wrong, just do that as a matter of law. So what's your argument on that? I mean, it does appear to be a legal issue. Your Honor, it is a legal issue. Our position is certainly this Court is capable, qualified, and could make that determination. But it also appears that it's a legal issue that involves numerous sort of thorny issues, and this case may be more appropriately resolved with a more narrow factual determination, in which case... Well, whether it's punitive or not, does that really need a factual determination? I mean, isn't that pretty much a straight legal issue? Absolutely. And perhaps I didn't explain what I meant. What I meant was if this case in fact turns on a more narrow factual determination, then perhaps it's the doctrine of constitutional avoidance, but there may be no reason to take on such weighty issues. Which has its appeal at times. Understood. But there may be no reason to take on such weighty issues because there are some intense factual issues that need to be resolved here, and we completely agree with the government that the record is relatively sparse in regard to notice and issues of that. But we do believe that some of those issues do bleed over, even to the fact of whether Mr. Elkins was even required to register in the first place. That actually hasn't been determined, and there is a complicated issue as to whether the modified categorical approach would apply to whether he needed to register at all. So it would obviously be your position, regardless of what we said, that he could still, on a remand, assert the defense that to a charge that his travel to California did not give rise to an obligation to register under Washington law, or that he reasonably did not know that the travel gave rise to an obligation. So you could still, even if we said it wasn't punitive, you could still assert that defense, right? Absolutely. That's correct. And probably would. I'm fairly confident we would, Your Honor. Unless Your Honors have other questions, I'll reserve. The panel does not appear to. Thank you. Thank you. May it please the Court. Just to jump in on Judge Callahan's reference to Crowder and the due process issue, I think there's really kind of two things going on. One is where Judges Colloquy ended with counsel, which is whether this issue of knowledge, any conflict between state laws, is a factual issue. And I think it is. But again, as Judge Callahan pointed out before, that would still require vacating the district court's dismissal of the indictment, reinstating the indictment, and that factual defense could be raised at trial. But what we have right now is a due process claim. And as I understand the due process claim by the defendant, it's under the Supreme Court's Lambert decision about lack of notice of registration requirements. And precisely because Storna has that knowledge requirement that this Court construed in Crowder, it's distinguishable from that line of cases. It's a knowledge, it's a mens rea requirement, and it's also distinguishable because Lambert involved a situation where there was kind of no, the Court said there was nothing that would prompt a reasonable person to inquire into their obligations. And in light of the specific notice that the defendant here had of his sex offender registration under Washington law, there's no credible claim that he at least didn't have a duty of inquiry or have reason to inquire into what his obligations were. And so for due process purposes, if the Court's going to reach that issue and going to rule on it, we think that the claim clearly loses under Lambert and the line of circuit cases we cited in our brief. So that, again, is reason enough if the Court is going to reach the issue to reverse on that issue to find no due process violation and to let whatever factual defenses may be raised play out in further proceedings below. Does that require a published opinion? This, Your Honor, is a district court decision declaring an act of Congress unconstitutional as applied, at least to a certain category of defendants. We leave in the Court's judgment whether it would require a published opinion or not, but certainly we think it would require some reasoning by the Court and it would require taking the district court's opinion off the books so that there's not an opinion out there holding an act of Congress unconstitutional. Did district court publish on this? I don't believe it published in the federal supplement, but the opinion is available on Westlaw, Alexis, those kind of citation services. The Court's issued the majority of its findings orally in the record and has followed up with, I think, a two- or three-page written order that quoted at length from juvenile mail and described the defendant's due process and other ex post facto argument, but didn't, as we mentioned, explicitly rule on those. Okay. If there are no further questions, we would ask the judgment below be reversed. All right. Thank you. This matter will stand submitted. Thank you both for your argument.
judges: Nelson, Tashima, Callahan